## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

JAMES RUSSELL MARS,            )
                              )
                Petitioner,   )
                              )
v.                            )        Case No. CIV-07-854-M
                              )
WALTER DINWIDDIE, WARDEN,      )
                              )
                Respondent.   )

## REPORT AND RECOMMENDATION

Petitioner, James Russell Mars, has filed a *pro se* petition for habeas corpus relief pursuant to 28 U.S.C. § 2254 challenging his state court conviction on various federal constitutional grounds. It is recommended that his petition be denied.

## I.    Background and Case History

On the morning of April 30, 2002, Petitioner confronted his live-in girlfriend, Stephanie Murray, about her whereabouts the previous evening. According to Ms. Murray, Petitioner knocked her down, hit her, pinned her down on a bed, smothered her face with a pillow, choked her, hit her with a baseball bat and rammed her head into a door so hard that it split the door. Ms. Murray's head began bleeding, and a neighbor arrived and took Ms. Murray to the hospital. Ms. Murray was treated at the hospital for lacerations, a ruptured eardrum and bruising on numerous parts of her body. Ms. Murray required fifteen staples to close the laceration on the back of her head.

Petitioner was thereafter charged and convicted in the District Court of Oklahoma County, State of Oklahoma, Case No. CF-2002-2503, of Assault and Battery with Intent to

Kill, after former conviction of two or more felonies. He was sentenced to a prison term of 20 years.

Petitioner appealed his conviction to the Oklahoma Court of Criminal Appeals (OCCA). The OCCA affirmed the conviction by opinion filed November 29, 2005. *See* Response to Petition for Writ of Habeas Corpus [Doc. #13], Exhibit 3, OCCA Summary Opinion.

Petitioner filed an application for post-conviction relief which was denied by the state district court on April 17, 2007. *See* Response, Exhibit 5, Order Denying Application for Post-Conviction Relief. Petitioner appealed the denial and the OCCA affirmed the denial on July 12, 2007. *See* Response, Exhibit 7, OCCA Order Affirming Denial of Post-Conviction Relief.

On July 31, 2007, Petitioner filed this action seeking federal habeas corpus relief.

## II.    <u>Claims for Habeas Corpus Relief</u>

Petitioner claims he is entitled to federal habeas corpus relief on four grounds: (1) the evidence was insufficient to sustain the conviction of assault and battery with intent to kill; (2) the prosecutor engaged in prosecutorial misconduct; (3) trial counsel rendered ineffective assistance; and (4) appellate counsel rendered ineffective assistance by failing to raise claims of ineffective assistance of trial counsel on direct appeal.

Petitioner raised the first three grounds for relief on direct appeal, and the OCCA denied the grounds and affirmed Petitioner's conviction. In post-conviction proceedings, Petitioner raised additional claims of prosecutorial misconduct and ineffective assistance of

trial counsel and further raised an ineffective assistance of appellate counsel claim. The OCCA found the claims of prosecutorial misconduct and ineffective assistance of trial counsel to have previously been raised on direct appeal and deemed those claims procedurally barred under the doctrine of *res judicata*. *See* Response, Exhibit 7, OCCA Order at 2. The OCCA denied Petitioner's claim of ineffective assistance of appellate counsel on the merits. *See id*.

## III.   <u>Standard of Review</u>

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) standards of review apply to those grounds for relief raised by Petitioner that were adjudicated on the merits by the state courts. *See Turrentine v. Mullin*, 390 F.3d 1181, 1188 (10th Cir. 2004); *Smallwood v. Gibson*, 191 F.3d 1257, 1264 (10th Cir.1999). Under AEDPA, this Court may grant Petitioner habeas relief only if the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

In applying the deferential AEDPA standard, the court first determines whether the principle of federal law on which the petitioner's claim is based was clearly established by the Supreme Court at the time of the state court judgment. *Turrentine*, 390 F.3d at 1189. If so, the court considers whether the state court decision was contrary to or an unreasonable application of that clearly established federal law. *Id*. A decision is "contrary to" clearly established federal law for purposes of § 2254 if "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or if "the state court

3

confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from" the result reached by the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). It is not enough that the state court decided an issue contrary to a lower federal court's conception of how the rule should be applied; the state court decision must be "diametrically different" and "mutually opposed" to the Supreme Court decision itself. *Id*. at 406. A state court decision involves an "unreasonable application" of federal law if "the state court identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413.

In conducting this inquiry, the factual findings of the state trial and appellate courts are presumed to be correct and the petitioner bears the burden of rebutting this presumption by clear and convincing evidence. *Short v. Sirmons*, 472 F.3d 1177, 1184 (10th Cir. 2006) (*citing* 28 U.S.C. § 2254(e)(1)).

Even if the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law, the analysis is not complete. Unless the error is a structural defect in the trial that defies harmless-error analysis, the court must apply the harmless-error standard of *Brecht v. Abrahamson*, 507 U.S. 619 (1993), and *O'Neal v. McAninch*, 513 U.S. 432 (1995). *Turrentine*, 390 F.3d at 1189.

4

IV.  **Analysis**

A.  **Sufficiency of the Evidence**

Petitioner challenges the sufficiency of the evidence for his conviction of assault and

battery with intent to kill.

In accordance with Oklahoma law, the jury was instructed on the elements of the

offense as follows:

> No person may be convicted of Assault and Battery with Intent to Kill
> unless the State has proven beyond a reasonable doubt each element of the
> crime.  These elements are:
>
> First,  an assault and battery;
>
> Second,  upon another person;
>
> Third,  with force likely to produce death;
>
> Fourth,  with the intent to cause or belief that it would cause death.

*See* Original Record [Doc. #15] at 177, Instruction No. 16 (*citing* OUJI-CR 4-7); *see also*

Okla. Stat. tit. 21, § 652(C).  Petitioner claims the evidence was insufficient to establish the

third[1] and fourth elements.

On federal habeas review of the sufficiency of the evidence, the proper inquiry is

"whether, after viewing the evidence in the light most favorable to the prosecution, any

---

[1]Respondent claims that although Petitioner raised on direct appeal this ground for relief – a challenge to the sufficiency of the evidence as to the element of the crime "with force likely to produce death" – Petitioner "abandoned" the argument in his habeas petition.  While the argument is not included in the petition, Petitioner has briefed the argument in the brief in support of the petition.  *See* Brief in Support [Doc. #10] at 10-11.  Because Petitioner appears *pro se*, the Court liberally construes the petition to include a challenge to the sufficiency of the evidence as to the element of the crime "with force likely to produce death."

rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Hamilton v. Mullin*, 436 F.3d 1181, 1194 (10th Cir. 2006) (*citing Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). This standard respects the jury's province to weigh the evidence and draw reasonable inferences from the testimony presented at trial. *Id*. Because sufficiency of the evidence is a mixed question of law and fact, the deference required by both § 2254(d)(1) and (d)(2) is applied. *Maynard v. Boone*, 468 F.3d 665, 673 (10th Cir. 2006). A federal habeas court must "defer to any determination of factual issues by the state court due to the presumption of correctness afforded by § 2254(e)." *Id*.

At trial, Ms. Murray testified about the assault and Petitioner's use of force, describing how upon initial contact Petitioner lunged at her and knocked her down:

Q.   What happened after he knocked you down?
A.   He grabbed ahold [sic] of me and shoved me into the bedroom.  He was slapping and hitting me.  I know he got me down on the bed and he had me pinned down with his legs with my arms up and he grabbed a pillow and put it over my face and was smashing my face with the pillow in his hand.
Q.   Do you recall how long the pillow was over your face?
A.   Well, I was panicked when he let me go.
Q.   Were you able to –
A.   I was gasping for air.
Q.   And did you feel as though there was pressure being put on the pillow?
A.   Yes.
Q.   And why is that?
A.   He was smashing my nose and my mouth with his hand.  I could feel it through the pillow.
Q.   What happened when he took the pillow off your face?
A.   He started striking me some more.
Q.   Striking you with what?
A.   His hand.
Q.   And where is he hitting you?
A.   In my face and he grabbed me by the throat.
Q.   Is he saying anything when he is grabbing you and hitting you?

A.      He was yelling at me and he kept – he said he could kill me and he just kept screaming at me.

Q.      Did he say why he could kill you or why he wanted to?

A.      Because I was leaving.

Q.      Had you seen him that angry before?

A.      Not that angry.

Q.      And when he was grabbing you around the neck how was he grabbing you?

A.      With his hand.  He was digging in and putting, you know, just a tight, tight grip and digging in with his nails and squeezing my larynx (indicating).

Q.      And were you able to breathe while he was doing that?

A.      No, not very well.

Q.      And what happened when he stopped, could you breathe?

A.      I could get my breath back, but, yeah.

Q.      And then what happened?

A.      At one point he shoved me in my bathroom and he had ahold [sic] of my face with his hands or by my ears, kind of had ahold [sic] of my head and he was ramming my head into the bathroom door, I don't know, numerous times, just, you know, steadily and it split the bathroom door when he –

Q.      At some point did you start to bleed?

A.      Yes.

Q.      Do you know when that was?

A.      He shoved me out of the bedroom because, I don't know, I know I was in the bedroom and I wound up in the bathroom -- we wound up back in the bedroom.  He was slapping and hitting me.  He shoved me out of the bedroom and then I got popped in the back of the head.

Q.      Do you know what you got popped in the back of the head with?

A.      The baseball bat.

Q.      And is that the first time that you had any knowledge about a baseball bat?

A.      No, he had the baseball bat out.  I mean, this occurrence, he flung me around the house so much I was in the front room, he had me pinned down on the couch, he shoved the baseball bat up underneath my chin and struck me in the chin with it, he hit me in the chest with it.  He kept jabbing me in the stomach with it.  He pinned me back on the couch with the baseball bat.  When he -- at one point when he shoved me back into the bedroom he hit me in the back of my hip with the bat.

Tr. Vol. 1 at 29-32.

On cross-examination, Ms. Murray testified as follows:

Q.    Okay.  Now you're in the bedroom?
A.    Yes.
Q.    Then what happened?
A.    He was striking me.  He got me down on the bed.  He pinned my arms back
      with his knees.  I was like this (Indicating) And he struck me several times in
      my face and started smashing down on the pillow.  I was trying to struggle.
      And he kept saying he would kill me.  And he let the pillow off me, he started
      striking me again.  I was trying to get my breath and he put the pillow back
      over my face again and held the pillow down.

Tr. Vol. I at 50.

The OCCA rejected Petitioner's sufficiency of the evidence claim on direct appeal,

citing *Spuehler v. State*, 709 P.2d 202, 203-04 (Okla. Crim. App. 1985).  *See* Response,

Exhibit 3 at 2 (unpaginated).  In *Spuehler*, the OCCA set out the test for sufficiency of the

evidence based on *Jackson v. Virginia*.  *See Valdez v. Ward*, 219 F.3d 1222, 1238 (10th Cir.

2000) ( recognizing that Oklahoma case law follows the *Jackson v. Virginia* standard for

reviewing  sufficiency of the evidence claims).  The OCCA's determination of this issue  is

not contrary to or an unreasonable application of  *Jackson v. Virginia*.

Ms. Murray's trial testimony addressed the nature and degree of force involved in the

assault.  According to Ms. Murray's testimony, Petitioner suffocated Ms. Murray with a

pillow, repeatedly applying pressure with his hands on her nose and mouth.  Using a tight

grip, he choked her with both hands, digging in with his nails and squeezing her larynx.  He

hit her hard enough to rupture an eardrum.  He then rammed her head into a door with force

sufficient to split the door.  Ms. Murray testified that while the attack was occurring

Petitioner stated he would kill her and that she was indeed afraid Petitioner was going to kill

8

her.  Tr. Vol. 1 at 31-35.  The neighbor who drove Ms. Murray to the hospital stated that she had blood all over her, that her head was split wide open in the back and that she was beat up.  She described Ms. Murray as incoherent, "com[ing] in and out of it" and hardly able to talk.  Tr. Vol. 1 at 66-67.  At the hospital, Ms. Murray received fifteen staples in the back of her head and was also treated for a ruptured ear drum and multiple bruises.  Tr. Vol. 1 at 36-37.  Viewing this evidence in the light most favorable to the prosecution, a rational trier of fact could find that Petitioner used "force likely to produce death."

Petitioner's claim that the evidence was insufficient to establish "intent to kill" is likewise without merit.  Ms. Murray testified Petitioner stated he wanted to kill her while attempting to suffocate her with a pillow, and that he then choked her and steadily rammed her head into a door.  The evidence of Petitioner's stated intent and desire to kill Ms. Murray together with the evidence of the nature and degree of force used, viewed in the light most favorable to the prosecution, could lead a rational trier of fact to find that Petitioner acted with intent to kill.

The evidence submitted to the jury was sufficient to prove all elements of the offense, and the OCCA's determination of this issue is not contrary to or an unreasonable application of *Jackson v. Virginia*.

### B.      Ground Two – Prosecutorial Misconduct

Petitioner claims the prosecutor engaged in prosecutorial misconduct by asking him to "comment on the truthfulness of other witnesses."  *See* Brief in Support [Doc. #10] at 13. The OCCA rejected this claim on direct appeal stating: "[a]sking the defendant whether he

or a witness was lying is an acceptable impeachment technique." *See* Response, Exhibit 3, OCCA Summary Opinion at 2 (unpaginated).

During the State's cross-examination of Petitioner, the prosecutor challenged Petitioner's rendition of facts and events by comparing that rendition to the testimony of the State's witnesses and then asking Petitioner whether those witnesses – including Ms. Murray – were lying. *See, e.g.*, Tr. Vol. I at 202-203, 204, 209, 211-212, 217-18.  At the conclusion of cross-examination, the prosecutor said to Petitioner:

> Q.     So I've called six witnesses in this case, five of them that I've called
>        you've called liars; is that right?
> A.     Their statements are incorrect.
> Q.     So pretty much everybody who has testified today is lying?
>        [DEFENSE COUNSEL]:   Judge, that's not what he said.
>        THE COURT:         Asked and answered.
> Q.     [PROSECUTOR]:   But you're telling the truth?
> A      Yes, I am telling the truth.

Tr. Vol. I at 218.  In addition, during closing argument, the prosecutor made further reference to Petitioner deeming the State's witnesses "liars" to the extent their testimony was inconsistent with his.  *See, e.g.,* Tr. Vol. II at 37.

Petitioner's claim of prosecutorial misconduct is without merit.  Finding prosecutorial misconduct on habeas review requires more than the existence of "undesirable or even universally condemned" remarks by the prosecutor. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). The relevant inquiry "is whether the prosecutor['s] comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id*.

Calling the defendant a "liar," though perhaps undesirable, does not rise to the level of a constitutional violation particularly where, as here, "the statements would have been perceived only as commentary on the implausibility of the defendant's story." *United States v. Hernandez-Muniz*, 170 F.3d 1007, 1012 (10th Cir. 1999).[2] *See also Bland v. Sirmons*, 459 F.3d 999, 1025 (10th Cir. 2006) (while labeling a defendant as a liar may be improper in certain situations, "it is permissible for the prosecution to comment on the veracity of a defendant's story"). Ground Two of the Petition should be denied. The OCCA's determination of this issue is not contrary to or an unreasonable application of Supreme Court precedent.

As part of his second ground for relief, Petitioner further claims the prosecutor engaged in prosecutorial misconduct by knowingly using false testimony. *See* Brief in Support [Doc. #10] at 14 ("The introduction of evidence that a prosecutor knows is false constitutes a denial of a defendant's right to due process."). In support of this ground for

---

[2]In *Hernandez*, the Tenth Circuit noted that "other circuits have expressly allowed prosecutorial use of the word "lie" or "lies" in certain cases that turn on the credibility of defendant's testimony." *Id*., 170 F.3d at 1012 n. 1 (*citing United States v. Catalfo*, 64 F.3d 1070, 1080 (7th Cir.1995) ("Where the character and credibility of the defendant are at issue and the evidence allows the inference that the defendant has been less than truthful, the prosecutor does not err in closing argument by referring to the defendant as a liar."); *United States v. Dean*, 55 F.3d 640, 665 (D.C.Cir.1995) (holding that use of the word lie is permissible, depending on context and tone of summation, and as long as "the prosecutor sticks to the evidence and refrains from giving his personal opinion"); *United States v. Jacoby*, 955 F.2d 1527, 1540-41 (11th Cir.1992)).

relief, Petitioner claims Ms. Murray's trial testimony was inconsistent with statements she made to police and with her preliminary hearing testimony. *See id.* at 14-15.

Petitioner did not raise this claim of prosecutorial misconduct on direct appeal. Therefore, Respondent contends the claim is procedurally barred. Respondent further contends Petitioner has failed to allege cause to overcome the procedural bar.

"In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Petitioner's prosecutorial misconduct claim alleging the use of false evidence is indeed procedurally barred. In affirming the district court's denial of post-conviction relief, the OCCA found that Petitioner had raised claims of prosecutorial misconduct on direct appeal and, therefore, further consideration of such claims was barred by *res judicata*. *See*

Response, Exhibit 7, OCCA Order Affirming Denial of Post-Conviction Relief at 2.[3]  And, Petitioner has failed to allege cause to overcome the procedural bar of this claim.

Moreover, Petitioner has failed to demonstrate that failure to consider his claim will result in a fundamental miscarriage of justice.  *See Herrera v. Collins*, 506 U.S. 390, 404 (1993) ("The fundamental miscarriage of justice exception is available only where the prisoner supplements his constitutional claim with a colorable showing of factual innocence.") (internal quotations and citation omitted).  To meet this standard, Petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of newly available or improperly excluded evidence.  *Schlup v. Delo*, 513 U.S. 298, 327-329 (1995)).

Petitioner's "false testimony" claim is based solely on challenges to the credibility of Ms. Murray's testimony.  He does not present any new evidence, or complain of any wrongly excluded evidence, that discounts Ms. Murray's testimony.  Rather, he contends Ms. Murray gave different accounts of what happened during the course of the investigation, preliminary hearing and then at trial.  Ms. Murray's credibility was an issue properly before the jury and subject to the jury's determination.  On habeas review, the court's role is not to repeat what

---

[3]As Respondent states, the prosecutorial misconduct claim raised by Petitioner on direct appeal was different from the claim raised in post-conviction proceedings.  The OCCA affirmed the denial of post-conviction relief on grounds of procedural bar finding the prosecutorial misconduct claim had been raised on direct appeal.  This statement is not entirely accurate because the post-conviction claim is distinct from the direct appeal claim.  Respondent correctly contends, however, that because the post-conviction claim was one that could have been raised on direct appeal, the claim was encompassed in the OCCA's finding that the claims were waived ("all issues not raised in the direct appeal, which could have been raised, are waived") and therefore procedurally barred.  Response at 13, n. 4, and Exhibit 7 at 2.

has been done at trial, *Herrera*, 506 U.S. at 400-401, but rather only to weed out the rare case in which a fundamental miscarriage of justice may have occurred. Petitioner has failed to establish the extremely rare scenario for which the actual innocence exception is intended. Therefore, his claim of prosecutorial misconduct premised on allegations that the prosecutor knowingly used false evidence is procedurally barred.

**C.    Grounds Three and Four – Ineffective Assistance of Trial and Appellate Counsel**

Petitioner next brings claims of ineffective assistance of trial counsel. He alleges trial counsel rendered constitutionally deficient performance by (1) waiving the court reporter during voir dire;[4] (2) failing to present medical expert testimony about Ms. Murray's injuries; and (3) failing to properly impeach the testimony of the State's witnesses.[5]

Petitioner raised these ineffective assistance of trial counsel claims for the first time during post-conviction proceedings, and the OCCA affirmed the district court's denial of post-conviction relief finding the claims to be procedurally barred. *See* Response, Exhibit 7 at 2.

---

[4]Respondent makes no mention of this claim of ineffective assistance of trial counsel, neither addressing the merits of the claim nor contending the claim is procedurally barred. Applying the liberal rules of construction that govern a *pro se* litigant's claims, the Court views the claim as both exhausted and properly raised as part of Petitioner's ineffective assistance of trial and appellate counsel claims. Therefore, the claim is addressed.

[5]On direct appeal, Petitioner raised an additional ineffective assistance claim that he does not raise here, claiming trial counsel was ineffective for failing to object to allegedly improper remarks of the prosecutor. As discussed in relation to Petitioner's second ground for relief, the prosecutor's remarks did not rise to the level of prosecutorial misconduct. Therefore, even if Petitioner had raised a claim of ineffective assistance of counsel on this basis, the claim would be without merit as Petitioner cannot demonstrate the requisite prejudice.

Respondent claims, therefore, that the ineffective assistance of trial counsel claims are procedurally barred from federal habeas review. As with Petitioner's claims of prosecutorial misconduct raised during post-conviction proceedings, the claims of ineffective assistance of trial counsel raised during post-conviction proceedings differed from the claim raised on direct appeal. Yet, the OCCA treated the claims as claims previously raised on direct appeal. *See* discussion, *supra*, footnote 3. Nonetheless, the claims should be deemed procedurally barred as encompassed within the OCCA's application of waiver to all claims that could have been raised on direct appeal.

Petitioner, however, has raised an ineffective assistance of appellate counsel claim, alleging counsel was ineffective for failing to raise on direct appeal his ineffective assistance of trial counsel claims. Therefore, the merits of the trial counsel claims must be reviewed despite the application of procedural bar to their review as independent claims.

The OCCA affirmed the district court's application of *Strickland v. Washington*, 466 U.S. 668 (1984), to deny the ineffective assistance of appellate counsel claim on the merits. *See* Response, Exhibit 7 at 1-2. Because the OCCA addressed the merits of Petitioner's ineffective assistance of appellate counsel claim, Petitioner is entitled to federal habeas relief only if the OCCA's determination of the claim is contrary to or an unreasonable application of *Strickland*.[6] Under this standard, Petitioner must show not only that the OCCA's

---

[6]To prevail on an ineffective assistance of counsel claim, a petitioner must demonstrate that his counsel's performance was deficient and prejudiced his defense. *Id.* Counsel's representation must fall below "an objective standard of reasonableness." *Strickland,*, 466 U.S. at 688.

application of *Strickland* was erroneous, but that it was objectively unreasonable. *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003).

A consideration of the merits of each of the alleged trial counsel errors reveals that they lack merit. *See Hain v. Gibson*, 287 F.3d 1224, 1231 (10th Cir. 2002) (application of *Strickland* requires the court to "look to the merits of the omitted issue"). Therefore, Petitioner's ineffective assistance of appellate counsel claim should be denied.[7]

### 1. <u>Failure to Have Court Reporter During Voir Dire</u>

Petitioner claims trial counsel failed to adequately develop the record when trial counsel waived having a court reporter record the voir dire. According to Petitioner, one of the jurors, Ms. Robison, was employed by the Oklahoma Department of Corrections. Petitioner alleges: "not only was she a DOC employee and predisposed to this type of assault but she was also a woman." *See* Brief in Support [Doc. #10] at 19. Petitioner provides no evidence to support this allegation and in speculative fashion claims he was denied the right to a fair and impartial jury.[8] Petitioner claims without a record of the voir dire, he has been prevented from presenting a complete record to this Court to support his claim of juror bias.

---

[7]Petitioner additionally claims appellate counsel was ineffective for failing to file a reply to the State's direct appeal brief. Petitioner acknowledges a reply brief is not required under Oklahoma's appellate procedural rules and fails to articulate the reasons why such a reply brief was necessary. His conclusory allegations are insufficient to support an ineffective assistance of appellate counsel claim on this basis.

[8]"The Fourteenth Amendment's Due Process Clause independently requires the impartiality of any jury empaneled to hear a case in a state court." *Goss v. Nelson*, 439 F.3d 621, 627 (10th Cir. 2006) (*citing Irvin v. Dowd*, 366 U.S. 717 (1961)).

Even if Petitioner had provided evidentiary support for the allegation that juror Robison is a DOC employee, his speculative allegation that her employment and gender prevented her from being fair and impartial does not give rise to the prejudice necessary to support an ineffective assistance of counsel claim. *See, e.g., McCoy v. Dretke*, No. Civ.A. 1:02-CV-098-C, 2005 WL 1148694 at **8-9 (N.D. Tex. May 16, 2005) (unpublished op.) (habeas petitioner failed to establish trial counsel was ineffective for failing to have court reporter record voir dire thereby preventing petitioner from establishing juror's relationship caused him prejudice; allegation of prejudice without affirmative proof was insufficient). Critically, Petitioner fails to allege that during voir dire Ms. Robison ever expressed an inability to serve as a fair and impartial juror. Therefore, Petitioner's claim of ineffective assistance of counsel is unsubstantiated and without merit.

## 2. Failure to Present Medical Expert Testimony

Petitioner claims trial counsel was ineffective for failing to present medical expert testimony about Ms. Murray's injuries. Petitioner testified at trial that Ms. Murray's head wound resulted from her falling and hitting her head on the television. Tr. Vol. I at 184-185, 206-207, 210. Petitioner further testified that many of the injuries Ms. Murray received were self-inflicted. For instance, Petitioner testified Ms. Murray choked herself, banged her head on the back of the couch and against the bedroom wall, and slapped herself. Tr. Vol. I at 178-179, 180, 205-206, 208, 209. Because Petitioner's version of events differed from that given by Ms. Murray, *see supra* at pp. 6-8, Petitioner claims medical expert testimony was

17

necessary to establish how the injuries to Ms. Murray occurred.  His attorney's failure to present such testimony, Petitioner claims, constitutes ineffective assistance of counsel.

As previously set forth, the injuries Ms. Murray suffered included a laceration to the back of her head which required fifteen staples and bruising over numerous parts of her body. In addition to Ms. Murray's testimony about the injuries, the State also offered the testimony of a police officer, Robert Dunnigan, who observed Ms. Murray at the hospital and described her bruising, swelling and bleeding, and the testimony of another police officer, Sergeant Colcroft, who took photographs of Ms. Murray's injuries, including the lacerations, bruising on her back and bruising to one of her ears.  *See* Tr. Vol. I at 79-80, 94-96.

Petitioner fails to demonstrate how medical expert testimony would have assisted the trier of fact in determining how the injuries occurred.  It was proper for the jury to determine whether to believe Ms. Murray's testimony about how the injuries occurred or whether to believe Petitioner's version of events without the aid of expert testimony.

Moreover, during closing argument, trial counsel pointed out to the jury that the State failed to provide medical expert testimony that Ms. Murray's head injury was consistent with a "wound from a bat or a club."  Tr. Vol. II at 28.[9]  In addition, trial counsel argued that some of Ms. Murray's  injuries could have been self-inflicted and that there was no medical expert testimony to the contrary.  Tr. Vol. II at 36.  The lack of medical expert testimony, therefore, was used as a strategic benefit to the defense.  Under these circumstances,

---

[9]Ms. Murray testified that Petitioner hit and jabbed her with a bat, but the jury did not convict Petitioner of the charge of Assault and Battery with a Dangerous Weapon.

Petitioner fails to demonstrate he was prejudiced by trial counsel's failure to present expert medical testimony about Ms. Murray's injuries.

### 3.   Failure to Impeach Witness Testimony

Finally, Petitioner claims trial counsel failed to impeach the trial testimony of certain witnesses including Ms. Murray and Ms. Murray's neighbor, Teresa Pittman.

At the preliminary hearing, Ms. Murray did not testify that Petitioner threatened to kill her.  Petitioner claims trial counsel was ineffective for failing to point this out to the jury when, at trial, Ms. Murray testified Petitioner verbally threatened her life.  Tr. Vol. I at 30-31.  Petitioner has failed to establish deficient performance.  Defense counsel conducted a thorough cross-examination of Ms. Murray and challenged her version of events.  Tr. Vol. I at 48-58.  Although Ms. Murray did not testify at the preliminary hearing that Petitioner had threatened to kill her, she had told the police officer who interviewed her immediately after the event that "[Petitioner] was yelling at her at least twice that if he was not told where she was last night that he was going to kill her."  *See* Petitioner's Response [Doc. #17], Exhibit A, Report of Officer Dunagan dated April 30, 2002.[10]

And, with respect to Pittman's testimony, Petitioner contends trial counsel failed to impeach her testimony that she saw a baseball bat near the front door which, Petitioner contends, is contrary to the testimony of the police officer who photographed the bat in the

---

[10]It does not appear Officer Dunagan's report was admitted at trial.  It would be reasonable for defense counsel, as an exercise of trial strategy, to not point out the deficiency in Ms. Murray's preliminary hearing testimony so as to avoid the prosecutor's use at trial of the statement contained in the police report.

bedroom, "half under the bed."  During closing argument, defense counsel challenged the credibility of Pittman's testimony.  Tr. Vol. II at 31-32.  Furthermore, the jury did not convict Petitioner of the charge of Assault and Battery with a Dangerous Weapon.  Tr. Vol. II at 43. Petitioner, therefore, has failed to demonstrate prejudice.

In sum, Petitioner has failed to demonstrate trial counsel's performance was either deficient or prejudicial.  Because Petitioner cannot demonstrate that his ineffective assistance of trial counsel claims have merit, Petitioner has failed to demonstrate appellate counsel was ineffective for failing to raise these issues of ineffective assistance of trial counsel on direct appeal.  The OCCA's adjudication of this issue is not contrary to or an unreasonable application of *Strickland*.  Grounds Three and Four of the Petition should be denied.

## RECOMMENDATION

It is recommended that the Petition for Writ of Habeas Corpus [Doc. #1] be denied.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636.  Any objections must be filed with the Clerk of the District Court by February  20th , 2008.  *See* Local Civil Rule 72.1.  Failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein.  *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## **STATUS OF REFERRAL**

This Report and Recommendation disposes of all matters referred by the District Judge in this case and terminates the referral.

DATED  __31st__  day of January, 2008.

VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE